IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **ALBERT DOSSIEA**, <br><br> **Plaintiff**, <br><br> v. <br><br> **BOARD OF EDUCATION of the City of Chicago**, *et al.*, <br><br> **Defendant**. | **Case No. 07 C 1124** <br><br> **Hon. Harry D. Leinenweber** |

### MEMORANDUM OPINION AND ORDER

Before the Court are the parties' Cross-Motions for Summary Judgment. For the following reasons, the motions are denied.

### I. FACTS

#### A. Dossiea's Responsibilities and Performance

Plaintiff Albert Dossiea ("Dossiea"), an African-American, has worked for the Defendant Board of Education for more than 30 years. Pl.'s Statement of Facts ("Pl.'s SOF") ¶ 1. In April 2004, he was promoted to the position of Chief Engineer, Grade 5.3, at Williams Multiplex School. Def.'s Statement of Facts ("Def.'s SOF") ¶ 2. The position of Engineer Custodian Grade 5 includes responsibilities such as operating and maintaining boilers, HVAC equipment, structural pest control, initiating requisitions for repairs to the school building, equipment, and grounds, servicing food service area and equipment, supervising the engineer, supervising custodial and maintenance staff, and preparing work

schedules for maintenance workers and custodial staff. Def.'s Ex. B-2. These duties also include being responsible for the cleanliness of the designated school building and grounds. Def.'s Ex. B-1.

Dossiea alleges unequal treatment by Principal Williams ("Williams") and Supervising Principal Oden ("Oden"). Def.'s SOF ¶ 1. Dossiea argues that he was treated less favorably than Thomas McCarthy ("McCarthy"), a Grade 2 engineer; Dan Kennedy ("Kennedy"), Chief Engineer at the school before Dossiea; William Bulvan ("Bulvan"), an engineer who was Dossiea's temporary replacement; and Jerome Longawa ("Longawa"), the Chief Engineer who was Dossiea's permanent replacement. These individuals are white. In November 2004, Oden called Dossiea a "straw boss" in response to his complaints about McCarthy's work performance. Dossiea Dep. at 35-37. Dossiea argues that this remark is evidence of racial animus on the part of his superiors.

Oden and Williams issued Dossiea several cautionary notices regarding his performance. On October 21, 2004, Oden issued Dossiea a cautionary notice for leaving debris on school grounds, a citation from a city inspector regarding rodent droppings, not removing garbage in the lunchroom in a timely fashion, and leaving the lower level staff area unclean. Def.'s Ex. E at 7.

On April 14, 2005, Oden issued Dossiea a cautionary notice for failure to swipe, tardiness from January to April 2005, leaving the

school without permission, failure to remove graffiti, inappropriate behavior during instruction time (bringing an outside guest into Head Start classrooms during reading time), authorizing students to return to the building after a fire alarm before the fire department arrived, storing flammable chemicals in the building near the entrance of the lower level where staff is located, peeling paint on the ceiling in the lower level where parents and students meet during parent training and student enrollment, and falsification of time (Dossiea could not be located on March 23, 2005). *Id.* at 24. On April 22, 2005, Williams issued amended cautionary notices describing each of these acts of misconduct separately. *Id.* at 32-38. With respect to the removal of graffiti, Williams testified that the custodial workers were responsible for actually removing graffiti under the direction of the engineer. Williams Dep. at 38-39.

On April 22, 2005, Williams issued Dossiea an amended cautionary notice for negligently failing to carry out a rule or order, namely wearing a hat in the building after being told not to. *Id.* at 32. The Board has no policy regarding whether hats may be worn in the building; it was an "unwritten" rule, according to Williams. Williams Dep. at 45.

On May 10, 2005, Williams issued Dossiea a cautionary notice for leaving the building without permission on May 4, 2005. *Id.* at 47.

On May 13, 2005, Williams issued Dossiea a Notice of Disciplinary Action for failure to swipe, failure to remove graffiti, failure to remove a crack pipe from the school entrance, and tardiness and poor attendance. *Id.* at 49. There was a disciplinary hearing on May 13, 2005, at which Williams found the charges substantiated and Dossiea was suspended for 3 days without pay. *Id.* at 49-56. The Board rejected his appeal on June 9, 2005, finding that he committed these violations despite prior warnings. *Id.* at 58-59.

On June 2, 2005, Williams issued Dossiea a cautionary notice for insubordination in failing to replace missing shades in a classroom with shades from an unused classroom. *Id.* at 61. When Williams asked Dossiea to replace the missing shades, he stated that the shades from the unused classroom did not fit. She told him that the shades in all the classrooms were the same size. Dossiea insisted that the shades were different sizes, and he did not replace the shades. According to the cautionary notice, by the next day, the shades had not been replaced. On June 20, 2005, Williams issued Dossiea a Notice of Pre-discipline Hearing for the shades incident. *Id.* at 62. On July 25, 2005, a discipline hearing was held. *Id.* at 67. Dossiea's union representative, Dennis Thomas, was present; he stated, "We are here regarding insubordination leveled against one of our members. We have to address this insubordination about a shade. I don't think we

should be here about a shade." *Id.* Thomas also stated that he went to look at the shade with Dossiea and found that the shades did not fit. He stated that a work order had been submitted requesting new shades, but that there was not currently any money in the budget for new shades. Nevertheless, Williams found that the charges were substantiated and recommended that Dossiea be suspended without pay for 5 days. *Id.* at 70. These charges were appealed, however, and Dossiea did not serve the suspension. Cheryl Colston Dep. at 8-9.

Dossiea requested a transfer on September 23, 2005. Williams approved the request, and it was granted by the Board's department of human resources. Def.'s SOF ¶ 21. Dossiea alleges that he transferred to another school at a lower pay grade because he no longer wanted to work under Principal Williams. Dossiea Dep. at 121.

### B. McCarthy's Responsibilities and Performance

Dossiea worked the day shift, from 6:00 a.m. to 2:00 p.m., later changed to 7:00 a.m. to 3:00 p.m. Pl.'s Ex. 13. McCarthy's shift was 3:00 p.m. to 11:00 p.m. Williams Dep. at 18. Cleaning of the classrooms and other areas of the school was to be done in the evening, after the children had left the school. Oden Dep. at 37. An emergency, such as a spill, would be cleaned during the day, but the basic cleaning would be done on McCarthy's shift, not Dossiea's shift. *Id.* at 37. Three or four custodial janitors

worked the night shift with McCarthy, and one custodian worked the day shift with Dossiea. Williams Dep. at 8. McCarthy was responsible for supervising the staff that cleaned the school during his shift, the night shift. *Id.* at 24. He was also responsible for closing the windows at night or making sure that his janitors closed the windows. *Id.*

Dossiea was McCarthy's direct supervisor. Def.'s SOF ¶ 4. Principal Williams supervised Dossiea and was also responsible for issuing cautionary notices to McCarthy. Williams Dep. at 18-19. The chain of command required Dossiea to report poor performance by the other engineers and custodians to Williams, and Williams would issue a cautionary notice to them if she deemed it necessary. *Id.* Dossiea made numerous complaints to Williams about McCarthy's performance. Dossiea Dep. at 57-59, Williams Dep. at 18, Pl.'s Ex. 15 (building alarm went off overnight at 3:00 a.m., windows left open); Pl.'s Ex. 16 (door glass dirty in every room on the second floor); Pl.'s Ex. 18 (lunchroom windows left open overnight, cupcake wrapper left on the floor covered in ants, no toilet paper in girls' washroom); Pl.'s Ex. 19 (lunchroom not cleaned, the floor not mopped, other areas not mopped or buffed); Pl.'s Ex. 20 (graffiti left on walls even though McCarthy reported that it was removed); Pl.'s Ex. 21 (front entrance left unlocked overnight, windows left open). Williams testified that she did not do anything about these reports because she "felt that it was

[Dossiea's] responsibility to supervise Mr. McCarthy." Williams Dep. at 18. She also testified that if Dossiea reported that someone left windows open overnight that she "would have done an investigation," and the investigation notes would be kept in an employee's file. Williams Dep. at 19. The record contains no investigation notes. Williams also admitted that McCarthy would have been responsible for making sure windows were closed at the end of his 11:00 p.m. shift, but she had no explanation for why she did not write him up for the May 1, 2005 incident in which the building alarm went off overnight at 3:00 a.m. because windows were left open. Williams Dep. at 41.

Williams issued one cautionary notice to McCarthy, on April 21, 2005, for tardiness. Def.'s Ex. E at 151; McCarthy Dep. at 14; Williams Dep. at 16. The notice stated that McCarthy would be subject to discipline if he did not improve his tardiness. Williams never talked to McCarthy about any of Dossiea's complaints regarding McCarthy's work. McCarthy Dep. at 23. On October 17, 2005, Williams issued a memorandum to McCarthy regarding the third floor classrooms not having been cleaned. Pl.'s Ex. 29. She did not discipline McCarthy for this incident.

## II. **STANDARD OF REVIEW**

"A grant of summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Gordon v. United Airlines, Inc.*,

246 F.3d 878, 885 (7th Cir., 2001); Fed. R. Civ. P. 56(c). A court views the facts in the light most favorable to the nonmovant. *Id.*

### III. **DISCUSSION**

The Court will evaluate Dossiea's claim under the *McDonnell Douglas* burden-shifting approach because he has provided no direct evidence of racial discrimination. Dossiea has not shown that Principal Oden's comment that he was a "straw boss" is evidence of racial animus. *See Am. Heritage Dictionary of the English Language*, 4th ed. (2000) (defining "straw boss" as "[a] worker who acts as a boss or crew leader in addition to performing regular duties."); *see Johnson v. Cambridge Industries, Inc.*, 325 F.3d 892, 896 (7th Cir., 2003) ("In spite of the alleged racist comments from certain co-workers, Johnson lacks evidence of race discrimination or retaliation and thus is proceeding under the *McDonnell Douglas* burden-shifting method.").

Under *McDonnell Douglas*, a plaintiff establishes a *prima facie* case of race discrimination if he demonstrates, by a preponderance of the evidence, that: (1) he is a member of a protected class; (2) at the time of the adverse employment action, he was meeting his employer's legitimate employment expectations; (3) in spite of meeting the legitimate employment expectations of his employer, he suffered an adverse employment action, and (4) he was treated less favorably than similarly situated employees of a different race. *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 326 (7th Cir., 2002).

Once a plaintiff establishes a *prima facie* case, then the employer must come forward with a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* The burden then shifts back to the plaintiff to rebut this explanation with evidence sufficient to enable a trier of fact to find that the employer's proffered explanation is pretextual.

### A. Defendants' Motion for Summary Judgment

Dossiea is an African-American, a member of a protected class. He suffered an adverse employment action because he was suspended for three days without pay. The key issues here are whether Dossiea was meeting his employer's legitimate expectations and whether he was treated less favorably than similarly situated employees of a different race.

Dossiea was given written warnings and disciplined for numerous infractions. He argues, however, that McCarthy and other members of the night crew committed similar or worse infractions but were not disciplined. Pl.'s Response to Def.'s SOF ¶ 6. Even if an employee was not meeting his employer's legitimate expectations, he can still establish a *prima facie* case of race discrimination if the company applied its expectations against him in a discriminatory manner. *Peele*, 288 F.3d at 329. "When a plaintiff produces evidence sufficient to raise an inference that an employer applied its legitimate employment expectations in a disparate manner (*i.e.*, applied expectations to similarly situated

[non-black] employees in a more favorable manner), the second and fourth prongs of *McDonnell Douglas* merge-allowing the plaintiff to establish a *prima facie* case, stave off summary judgment for the time being, and proceed to the pretext inquiry." *Id.*; *see Flores v. Preferred Technical Group*, 182 F.3d 512, 515 (7th Cir., 1999) (where plaintiff admitted that she broke the rules but argues that her employer did not discipline non-Hispanic rule-breakers, "[i]t makes little sense in this context to discuss whether she was meeting her employer's reasonable expectations. None of the employees who joined the coffee room fracas were meeting PTG's reasonable expectations. PTG could have fired any or all of them. The issue in this case is whether Flores was singled out for discipline because she is Hispanic. Therefore, under the facts of this case, Flores does not have to show that she was meeting her employer's legitimate expectations in order to establish a *prima facie* case of discriminatory discharge."); *Curry v. Menard, Inc.*, 270 F.3d 473, 478 (7th Cir., 2001); *see also Oest v. Illinois Dept. of Corrections*, 240 F.3d 605, 612 n.3 (7th Cir., 2001) (noting that the district court was correct in holding that the second prong was not necessary to the analysis where the people judging the plaintiff's performance were the same she accused of discriminating against her).

"A plaintiff may demonstrate that another employee is 'similarly situated' to [him] by 'show[ing] that there is someone

who is directly comparable to [him] in all material respects.'" *Id.* at 330 (citation omitted). The court "must look at all relevant factors, the number of which depends on the context of the case." *Id.* (citation omitted). "'[I]n disciplinary cases–in which a plaintiff claims that [he] was disciplined by [his] employer more harshly than a similarly situated employee based on some prohibited reason–a plaintiff must show that [he] is similarly situated with respect to performance, qualifications, and conduct.'" *Id.* (citations omitted and alterations added). Dossiea argues that Bulvan, Longawa, Kennedy, and McCarthy are similarly situated individuals. There is no evidence in the record showing that Bulvan, Longawa, and Kennedy committed infractions similar to Dossiea's; thus, the Court will compare Dossiea only to McCarthy.

The Court finds that McCarthy's conduct and performance are similar to Dossiea's in that on several occasions, they failed to clean the building properly, were tardy, and failed to swipe in or out. The record shows that Dossiea repeatedly complained to Principal Williams about the failure of McCarthy (and the night crew) to clean and secure the building properly during the evening shift. Dossiea wrote several reports to Williams regarding the floors not being mopped and scrubbed, garbage not being taken out, windows being left open, etc. *See* Pl.'s Ex. 15-16, 18-21. Despite being informed of these incidents, Williams never spoke with McCarthy about them and did not discipline him. McCarthy Dep.

at 23. Williams maintains that she did nothing about McCarthy's performance because she felt that it was Dossiea's responsibility to supervise him. Williams Dep. at 18. Yet, Dossiea did attempt to supervise McCarthy by informing him on several occasions about his (and the night crew's) failure to properly clean the washrooms, classrooms, auditorium, and library, excessive tardiness, and leaving the building unsecured. Dossiea Dep. at 57-59. Dossiea had conferences with McCarthy about his performance, and although McCarthy said that he would improve, he did not. *Id.* at 59. Dossiea's authority over McCarthy and the custodians was limited to informing them of his concerns and reporting the behavior to Williams; it was ultimately Williams' decision whether to discipline. *See* Williams Dep. at 19; Dossiea Dep. at 53-55.

The Court rejects Defendant's argument that because McCarthy was a Grade 2 engineer, and Dossiea was a Grade 5 engineer, they were not similarly situated with respect to qualifications. Although Dossiea had somewhat greater supervisory responsibilities, McCarthy did have supervisory responsibility over the night crew. *See* Williams Dep. at 24; Oden Dep. at 15. They both had some supervisory responsibilities and some housekeeping and maintenance responsibilities. Both dealt with the same supervisor – Principal Williams. *See Peele*, 288 F.3d at 330; *see also Ellis v. United Parcel Service, Inc.*, 523 F.3d 823, 826 (7th Cir., 2008) ("to be similarly situated, a manager must have been treated more favorably

by the same decisionmaker that fired the [plaintiff].").  The Court finds that McCarthy and Dossiea were similarly situated in all material respects.

Since Dossiea has established a *prima facie* case, the burden shifts to the Board to come forth with a legitimate, non-discriminatory reason for disciplining Dossiea.  The Board states that Principal Williams disciplined Dossiea because she was trying to run a "clean and orderly school."  Def.'s Mem. at 12.  This is a facially legitimate reason.  The Court turns next to whether Dossiea has demonstrated that the Board's stated reason is a pretext for discrimination.  *See Gordon*, 246 F.3d at 888.

To show pretext, Dossiea has the burden of demonstrating that Defendant's stated justification is unworthy of credence.  *See id.* Dossiea may make this showing by providing "'evidence tending to prove that the employer's proffered reasons are factually baseless, were not the actual motivation for the [discipline] in question, or were insufficient to motivate the [discipline].'"  *Id.* at 889 (citing *Adreani v. First Colonial Bankshares Corp.*, 154 F.3d 389, 395 (7th Cir., 1998)).  The Court finds that Dossiea has presented sufficient evidence of pretext to preclude summary judgment. Principal Williams' proffered explanation for disciplining Dossiea is that she was trying to run a clean and orderly school.  As discussed above, however, there is evidence that McCarthy, a non-black engineer, was not disciplined even though he failed to

maintain and clean the school on many occasions during his shift. This inconsistency creates a genuine issue of material fact as to whether Defendants' stated reason for disciplining Dossiea was a pretext for discrimination. *See Curry*, 270 F.3d at 479; *Gordon*, 246 F.3d at 892 ("'A showing that similarly situated employees belonging to a different racial group received more favorable treatment can also serve as evidence that the employer's proffered legitimate, nondiscriminatory reason for the adverse job action was a pretext for racial discrimination.'") (citation omitted). While Williams did issue one cautionary notice to McCarthy for tardiness, she did not issue any cautionary notices to him for failing to properly clean and maintain the school, even when he left the building unsecured (windows left open) at night.

Because Dossiea has presented a *prima facie* case and sufficient evidence that Defendants' proffered explanation for disciplining him was pretext, Defendants' Motion for Summary Judgment is denied.

### B. Plaintiff's Partial Motion for Summary Judgment

Dossiea argues that the Court should grant him summary judgment on his claim that he was subjected to different terms and conditions of employment and a hostile work environment. For the reasons discussed above, there is a genuine issue of material fact as to whether Williams disciplined Dossiea more harshly because of his race. With respect to his hostile work environment claim,

Dossiea argues that Williams created a hostile work environment because she forced him to do humiliating tasks such as mop the floor while Williams and Dossiea's day custodian watched, paging him constantly over the intercom, and making him fill out meaningless reports.  To prevail on a hostile work environment claim, Dossiea must show that he was harassed because of his race, and that the harassment was "so severe or pervasive as to alter the conditions of [the victim's] employment and create an abusive working environment."  *Faragher v. City of Boca Raton*, 524 U.S. 775, 786 (1998) (citation and internal quotation marks omitted).  The Court agrees with Defendants that Dossiea has not shown that Williams' conduct was sufficiently severe or pervasive.  Thus, Dossiea's Motion for Partial Summary Judgment is denied.

## IV. CONCLUSION

For the reasons stated herein, the parties' Motions for Summary Judgment are denied.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　　　　　
　　　　　　　　　　　　　　Harry D. Leinenweber, Judge
　　　　　　　　　　　　　　United States District Court

**DATE:** August 22, 2008